UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARTHUR L. JENKINS III, M.D. and JENKINS
NEUROSPINE, LLC,

                                    Plaintiffs,

                    -v.-

AETNA HEALTH INC., AETNA HEALTH
INSURANCE COMPANY OF NEW YORK, and
AETNA HEALTH AND LIFE INSURANCE
COMPNAY,

                                    Defendants.

23 Civ. 9470 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

    Arthur Jenkins III, M.D. ("Dr. Jenkins") and Jenkins Neurospine, LLC

("JNS") (collectively, "Plaintiffs") bring this action against Aetna Health Inc.,

Aetna Health Insurance Company of New York, and Aetna Health and Life

Insurance Company ("AHLIC") (collectively, "Aetna" or "Defendants") seeking to

enforce Aetna's purported representations regarding the amounts it would

reimburse for surgical procedures performed by Dr. Jenkins on Aetna health

plan members.  Although Plaintiffs initiated this action in the Supreme Court

of the State of New York, New York County, on October 27, 2023, Aetna

thereafter removed the case to this Court.  As the proffered basis for federal

jurisdiction, Aetna asserts that Plaintiffs' causes of action are "completely"

preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"),

Pub. L. 93-406, 88 Stat. 829.  Alternatively, Aetna claims that this Court has

jurisdiction over Plaintiffs' claims to the extent they are preempted by the

Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (the "Medicare Act"), Pub. L. 108-173, 117 Stat. 2066.

Conversely, Plaintiffs assert that Aetna's removal of this action is without a valid legal basis and seek to remand the case back to the Supreme Court of the State of New York for lack of federal subject matter jurisdiction. For the reasons that follow, the Court grants Plaintiffs' motion.

**BACKGROUND**[1]

**A.    Factual Background**

**1.    The Parties and the Aetna Health Plan**

Plaintiff Dr. Jenkins is a neurosurgeon. (Compl. ¶ 20). In his private practice, JNS, Dr. Jenkins focuses on spinal surgery. (*Id.* ¶ 21). Defendant Aetna is a group of related companies that insure, operate, and administer health plans in New York and, along with its affiliates, throughout the United States. (*Id.* ¶ 14). Those plans obligate Aetna, directly or indirectly, to pay for covered health care services rendered to plan members. (*Id.*).

To satisfy its obligations under its various health plans, Aetna (like other major health insurers) enters into agreements with hospitals, physicians, and other health care providers whereby the providers become members of Aetna's "provider network." (Compl. ¶ 15). These "in-network" providers agree to render health care services to Aetna members at contractually negotiated rates,

---

[1]    For ease of reference, the Court refers to Plaintiffs' Complaint as "Compl." (Dkt. #1-1); to Defendants' notice of removal as "Notice of Removal" (Dkt. #1); to Plaintiffs' memorandum of law in support of their motion for remand as "Pl. Br." (Dkt. #14); to Defendants' memorandum of law in opposition to Plaintiffs' motion as "Def. Opp." (Dkt. #23); and to Plaintiffs' reply memorandum of law as "Pl. Reply" (Dkt. #24).

which are often discounted from the providers' customary charges for their services.  (*Id.*).

Aetna's health plans also provide reimbursement for health care services rendered to their members by non-participating (or "out-of-network") providers, who (unlike "in-network" providers) do not agree to contractually discounted rates.  (Compl. ¶ 17).  Typically, Aetna's health plans do not specify the rates of reimbursement they pay for these out-of-network services, but rather refer to an "allowed amount" or "allowable amount" that is not clearly defined by the plan.  (*Id.* ¶¶ 18-19).  For instance, the Citigroup Health Benefit Plan, administered by Aetna, reimburses out-of-network medical expenses at "a percentage of the maximum allowed amount," which amount is not specified in the Summary Plan Description.  (Notice of Removal, Ex. 6 at 9).[2]  Likewise, the Health Savings Plan for CVS Health, also administered by Aetna, pays for out-of-network surgeries based on a "recognized charge" that Aetna "determines to be appropriate" considering a non-exhaustive list of factors that include the cost of similar services and the way the services are billed.  (*Id.*, Ex. 7 at 48, 126).

Dr. Jenkins is not a member of the provider networks maintained by Aetna.  (Compl. ¶ 2).  Because Dr. Jenkins is an out-of-network provider with respect to Aetna's health plans, prior to performing surgery on an Aetna member, JNS routinely reached out to Aetna by telephone to verify, among

---

[2]    ERISA regulations require health care plans to provide "Summary Plan Descriptions" to members for ease of reference.  29 C.F.R. § 2520.102-3.

other things, what it would be paid for the proposed procedure.  (*Id.* ¶ 24).

Plaintiffs allege that, during those telephone calls, Aetna representatives

frequently specified a rate of reimbursement that would apply, often based on a

percentage of the usual, customary, and reasonable charges for the proposed

services (the "UCR Rate").  (*Id.* ¶ 25).  Plaintiffs allege that, pursuant to the

parties' established course of dealing, Plaintiffs have repeatedly billed their

claims for services directly to Aetna, and Aetna has accepted Plaintiffs' bills

and rendered payment directly to JNS.  (*Id.* ¶ 26).  Indeed, Plaintiffs assert that,

for years, Aetna paid Plaintiffs' claims at the specific rates that Aetna

representatives had promised during the pre-surgery verification process.  (*Id.*

¶ 27).

### 2.    Aetna Allegedly Applies In-Network Rates to Plaintiffs' Claims

Plaintiffs allege that, in or around 2018, Aetna began paying Plaintiffs'

claims at rates that were significantly lower than both the rates specified by

Aetna's representatives during the verification process and the rates that Aetna

had historically paid for Dr. Jenkins's services.  (Compl. ¶ 28).  According to

Plaintiffs, after they inquired about the change, Aetna representatives informed

JNS that Aetna had processed certain claims for Dr. Jenkins's services at the

greatly reduced in-network rates that Aetna had negotiated with Elmhurst

Hospital Center, where Dr. Jenkins is a member of the voluntary medical staff.

(*Id.* ¶ 29).  By way of example, Plaintiffs allege that Dr. Jenkins performed a

complex spine surgery on an Aetna member in reliance on Aetna's promise to

reimburse Plaintiffs at no less than 50% of the UCR Rate.  (*Id.* ¶ 35).  Plaintiffs

billed $255,000 for the procedure but were allegedly paid a total of

$3,292.07 — presumably based on the in-network rate for the same procedure

that Aetna had negotiated with Elmhurst Hospital Center.  (*Id.*).  Plaintiffs

maintain that they never agreed to those rates, and that Aetna has refused to

reprocess their claims and correct its purported errors by paying what it had

promised.

### 3. Plaintiffs Commence This Action in the Supreme Court of the State of New York

On September 19, 2023, Plaintiffs commenced this action in the

Supreme Court of the State of New York, New York County.  In their Complaint,

Plaintiffs allege that they suffered no less than $5.6 million in damages as a

result of Aetna's years-long refusal to honor its commitment to pay their claims

at the promised rates.  (Compl. ¶ 81).  The Complaint contains a list of forty-

four claims that Plaintiffs allege were improperly paid.  (*Id.*, Ex. B).

Plaintiffs assert four causes of action under New York law: (i) breach of

implied contract, (ii) unjust enrichment, (iii) promissory estoppel, and

(iv) negligent misrepresentation.  (*See generally* Compl.).  As to the First Cause

of Action, Plaintiffs allege that they entered into a series of implied-in-fact

contracts whereby Dr. Jenkins would render medical services to Aetna

members in exchange for payment at a specific rate of reimbursement, and

that Aetna breached those contracts by incorrectly processing Plaintiffs' claims

at the Elmhurst Hospital rate, or such other rate far below that which was

promised.  (*Id.* ¶¶ 45-54).  As to the Second Cause of Action, Plaintiffs allege

that Aetna was unjustly enriched, at Plaintiffs' expense, by failing to reimburse

Plaintiffs' claims at the rates allegedly promised during the pre-surgery verification process. (*Id.* ¶¶ 55-61). As to the Third Cause of Action, Plaintiffs allege that Aetna promised to reimburse their services at specifically identified rates, which promises Plaintiffs relied on in agreeing to perform such services, and that Aetna should be estopped from contending that any other rate was properly applied. (*Id.* ¶¶ 62-69). Finally, as to the Fourth Cause of Action, Plaintiffs allege that Aetna negligently misrepresented the rates that would apply to Plaintiffs' claims. (*Id.* ¶¶ 70-81).

### 4.   Aetna Removes This Action to Federal Court

By Notice of Removal dated October 27, 2023, Aetna removed the instant action to this Court. Aetna alleges that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, *i.e.*, federal question jurisdiction, on two grounds. *First*, Aetna states that Plaintiffs' claims are completely preempted by federal law — specifically, ERISA — because some of the services at issue were provided to patients covered by ERISA-governed plans, which plans permitted the assignment of benefits to providers like Plaintiffs. (Notice of Removal ¶¶ 17-27). *Second*, Aetna states that Plaintiffs' claims may be preempted by the Medicare Act because AHLIC — one of the three Aetna entities named as a defendant in the Complaint — only provides Medicare-related plans (and did not insure or administer any commercial health plans) during the relevant time period. (*Id.* ¶¶ 28-32).

B.     **Procedural Background**

Following Defendants' removal of this action, on November 2, 2023, the parties filed a stipulation setting forth a briefing schedule for Plaintiffs' anticipated motion to remand, which stipulation the Court endorsed the same day. (Dkt. #8-9). After this Court granted them a brief extension of time, on December 29, 2023, Plaintiffs filed their motion to remand and accompanying papers. (Dkt. #12-14). On February 9, 2024, Defendants filed their opposition to Plaintiffs' motion. (Dkt. #23). On March 8, 2024, Plaintiffs filed their reply brief in further support of their motion. (Dkt. #24).

## DISCUSSION

A.     **Applicable Law**

"[F]ederal courts are courts of limited jurisdiction and, as such, lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Purdue Pharma L.P.* v. *Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (internal quotation marks omitted). "Congress has granted district courts original jurisdiction over cases in which there is a federal question, *see* 28 U.S.C. § 1331, and certain cases between citizens of different states, so long as the requirements of complete diversity and amount in controversy are met[.]" *Id.* (citing 28 U.S.C. § 1332).

Pursuant to 28 U.S.C. § 1441(a), a party may remove a state court action to federal court if the action could originally have been commenced in federal court. *See* 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district

7

courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.").  A plaintiff challenging a removal for lack of subject matter jurisdiction may move, in the federal court, to remand back to the state court "at any time before final judgment."  28 U.S.C. § 1447(c).  On the motion to remand, the "defendant, as the party seeking removal and asserting federal jurisdiction, bears the burden of demonstrating that the district court has original jurisdiction."  *McCulloch Orthopaedic Surgical Servs., PLLC* v. *Aetna Inc.*, 857 F.3d 141, 145 (2d Cir. 2017).

"Removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand."  *Lucas* v. *Verizon Commc'ns, Inc.*, No. 20 Civ. 5542 (AJN), 2021 WL 1226889, at *3 (S.D.N.Y. Mar. 31, 2021) (alteration adopted and citation omitted); *see also Purdue*, 704 F.3d at 213. This is because "[r]emoval jurisdiction ... implicates significant federalism concerns and abridges the deference courts generally give to a plaintiff's choice of forum."  *Frontier Ins. Co.* v. *MTN Owner Tr.*, 111 F. Supp. 2d 376, 378 (S.D.N.Y. 2000).  Thus, "[u]nder the 'well-pleaded complaint' rule, a defendant generally may not 'remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law.'"  *McCulloch*, 857 F.3d at 145 (quoting *Aetna Health Inc.* v. *Davila*, 542 U.S. 200, 207 (2004)).

An exception to this rule exists under the so-called "complete preemption doctrine."  The doctrine of complete preemption is a corollary to the well-

pleaded complaint rule and recognizes that "Congress may so completely pre-empt a particular area that any civil complaint raising [a] select group of claims [in that area] is necessarily federal in character." *Metro. Life Ins. Co.* v. *Taylor*, 481 U.S. 58, 63-64 (1987). Therefore, a federal statute with "extraordinary pre-emptive power" can "convert[ ] an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 65; *see also Davila*, 542 U.S. at 207-08 ("'[W]hen a federal statute wholly displaces the state-law cause of action through complete preemption,' the state claim can be removed ... because ... 'a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'" (quoting *Beneficial Nat'l Bank* v. *Anderson*, 539 U.S. 1, 8 (2003))).

Of potential note, where a Complaint sets forth multiple causes of action, "the presence of even one claim 'arising under' federal law is sufficient to satisfy the requirement that the case be within the original jurisdiction of the district court for removal." *T & M Meat Fair, Inc.* v. *United Food & Com. Workers, Loc. 174, AFL-CIO*, 210 F. Supp. 2d 443, 448 (S.D.N.Y. 2002) (quoting *Wisconsin Dep't of Corrections* v. *Schacht*, 524 U.S. 381 (1998)).

## B.    Analysis

Aetna's first argument for removal is that Plaintiffs' state-law causes of action are, in actuality, claims to recover plan benefits that are completely preempted by ERISA. (Notice of Removal ¶¶ 17-27). In the alternative, Aetna contends that this Court has subject matter jurisdiction over Plaintiffs' causes of action based on the Medicare Act's "broad preemption provision." (*Id.* ¶¶ 28-

32).  The Court will analyze each argument in turn, but ultimately finds in favor of remand.

###   1.   Plaintiffs' Causes of Action Are Not Preempted by ERISA § 502(a)(1)(B)

"ERISA provides for the wholesale displacement of certain state-law claims."  *McCulloch*, 857 F.3d at 145.  Pursuant to ERISA Section 502(a)(1)(B), a participant or beneficiary may bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  ERISA § 502(a)(1)(B), *codified at* 29 U.S.C. § 1132(a)(1)(B).  This civil enforcement scheme "completely preempts any state-law cause of action that 'duplicates, supplements, or supplants' an ERISA remedy."  *Montefiore Med. Ctr.* v. *Teamsters Loc. 272*, 642 F.3d 321, 327 (2d Cir. 2011) (citation omitted). ERISA's preemption of certain state-law claims makes sense, as the statute seeks "to provide a uniform regulatory regime over employee benefit plans." *Davila*, 542 U.S. at 208; *see also N.Y. State Conf. of Blue Cross & Blue Shield Plans* v. *Travelers Ins. Co.*, 514 U.S. 645, 656-57 (1995) ("Congress intended 'to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government ..., [and to prevent] the potential for conflict in substantive law ... requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.'" (alterations in original) (quoting *Ingersoll-Rand Co.* v. *McClendon*, 498 U.S. 133, 142 (1990))).  For this reason, where a plaintiff

10

brings a state law claim that is "within the scope" of ERISA Section 502(a)(1)(B), ERISA's preemption power will take effect.

In *Aetna Health Inc.* v. *Davila*, the Supreme Court established a two-pronged test to determine whether a state-law claim is completely preempted by Section 502(a)(1)(B) of ERISA (the "*Davila* test").  542 U.S. at 209-10; *see also Wurtz* v. *Rawlings Co.*, 761 F.3d 232, 242 (2d Cir. 2014).  Under the first prong, the claim must be brought by "an individual [who], at some point in time, could have brought his claim under ERISA [Section] 502(a)(1)(B)."  *Davila*, 542 at 210.  In making this determination, courts consider: "[i] whether the plaintiff is the type of party that can bring a claim pursuant to [Section] 502(a)(1)(B) and also [ii] whether the actual claim that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to [Section] 502(a)(1)(B)."  *McCulloch*, 857 F.3d at 146 (citing *Montefiore*, 642 F.3d at 328).  Under the second prong, the claim must involve "no other independent legal duty that is implicated by a defendant's actions."  *Davila*, 542 U.S. at 210.  "The *Davila* test is conjunctive — a state-law claim is completely preempted by ERISA only if both prongs of the test are satisfied."  *Id.* (citing *Montefiore*, 642 F.3d at 328).

### a.    Aetna Satisfies *Davila* Prong 1, Step 1

The Court begins its analysis as to the first prong of the *Davila* test by assessing whether Plaintiffs are "the type of party that can bring a claim pursuant to [Section] 502(a)(1)(B)."  *Montefiore*, 642 F.3d at 328.  Defendants argue that they have made a "colorable showing" that Plaintiffs are such a

party, specifically because Plaintiffs were assigned patients' rights to payment for medical benefits under ERISA.  (Def. Opp. 4).

Under Section 502(a), a civil action may be brought "by a participant or beneficiary" of an ERISA plan to recover benefits due to her under the terms of that plan.  *See* 29 U.S.C. § 1132(a)(1)(B).  ERISA defines a beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  *Id.* § 1002(2)(B)(8).  "Although [Section] 502(a) is narrowly construed to permit only the enumerated parties to sue directly for relief, [the Second Circuit] ha[s] carv[ed] out a narrow exception to the ERISA standing requirements to grant standing to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care."  *McCulloch*, 857 F.3d at 146 (internal quotations and citations omitted).

In *Montefiore Medical Center* v. *Teamsters Local 272*, an "in-network" hospital brought state-law claims against a union's employee benefit plan that was governed by ERISA.  642 F.3d at 324-25.  The hospital sought reimbursement for medical services that it had provided to beneficiaries of the plan.  *Id.* at 325-26.  The Second Circuit found that the hospital's state-law claims were completely preempted by ERISA because, among other things, the hospital had received a valid assignment of the beneficiaries' right to payment; the hospital was, therefore, the type of party that could bring its claim regarding benefits pursuant to Section 502(a)(1)(B).  *Id.* at 328, 333.

12

Here, Defendants attached the forms pertaining to two of the forty-four disputed claims to their Notice of Removal, wherein Plaintiffs had checked a box indicating that they had accepted an assignment of benefits governed by ERISA from the patient.  (Def. Opp. 4).  Further, the specific plans implicated by the two proffered claim forms did not contain any anti-assignment provisions that would preclude Plaintiffs from bringing ERISA claims.  *See McCulloch*, 857 F.3d at 147 (finding that the presence of anti-assignment provisions rendered any assignment of benefits "ineffective — a legal nullity"). Thus, the Court finds that Plaintiffs have derivative standing as assignees of the plans to pursue an ERISA claim.  *See Conn.* v. *Physicians Health Srvs. of Conn., Inc.*, 287 F.3d 110, 121 (2d Cir. 2002) (noting that "[a]bsent a valid assignment of a claim, ... nonenumerated parties lack statutory standing to bring suit under [ERISA] even if they have a direct stake in the outcome of the litigation").  Accordingly, Defendants satisfy the first step of prong one of *Davila.  See Montefiore*, 642 F.3d at 328-29; *see also McCulloch*, 857 F.3d at 147 (citing *Montefiore* for the notion that this prong of the *Davila* test is met where the provider's "reimbursement forms contained a 'Y' for 'yes' in the space certifying that the patients had assigned their claims to the hospital").

### b.     Aetna Fails to Satisfy *Davila* Prong 1, Step 2

Importantly, however, the Court's analysis does not end there.  Under the first prong of the *Davila* test, the Court must also determine "whether the *actual claim* that [plaintiff] asserts can be construed as a colorable claim for benefits pursuant to [Section] 502(a)(1)(B)."  *McCulloch*, 857 F.3d at 149

13

(emphasis in original) (citing *Montefiore*, 642 F.3d at 328).  A colorable ERISA claim exists when the claim "implicates coverage and benefit determinations as set forth by the terms of the ERISA benefit plan."  *Montefiore*, 642 F.3d at 325.  Plaintiffs assert that their claims rest on state-law obligations arising from Aetna's promises of payment at specific rates, "irrespective of the actual terms of its plans."  (Pl. Br. 12).  By way of example, Plaintiffs allege Aetna promised to pay JNS no less than 50% of the UCR Rate for one complex spine surgery that Dr. Jenkins performed on an Aetna member, but ultimately paid a dramatically lower rate for the procedure; neither rate was set forth by the applicable plan.  (*See* Compl. ¶¶ 35-36).

In support of their argument, Plaintiffs state that the Court need look no further than the Second Circuit's decision in *McCulloch Orthopaedic Surgical Services, PLLC* v. *Aetna Inc.*  In *McCulloch*, the plaintiff, an out-of-network physician, alleged that his office staff had called Aetna prior to performing two knee surgeries on an Aetna member to "obtain information about the patient's coverage," and that on the call, an Aetna representative had indicated, *inter alia*, that "[the plaintiff] would be reimbursed at seventy percent of the [UCR] rate" for his services.  857 F.3d at 144.  When Aetna failed to pay the plaintiff's claim at that rate, he brought an action in state court for promissory estoppel, seeking "the difference between seventy percent of the UCR rate … and what Aetna had paid him."  *Id.* at 144-45.  As in the instant action, Aetna removed the case to federal court, alleging jurisdiction under the complete preemption doctrine, and the plaintiff moved to remand.  *See id.* at 145.  The Second

14

Circuit found that Aetna could not satisfy the second step of the first *Davila* prong because the plaintiff's claim did "not depend on the specific terms of the relevant health care plan or on Aetna's determination of coverage or benefits pursuant to those terms," regardless of whether Aetna's promise was based on a "mere summary of the patient's health care plan and the coverage and benefits that would apply to an 'out-of-network' provider." *Id.* at 149. Instead, the *McCulloch* court held that the plaintiff's claim turned on Aetna's promise of payment, his reliance thereon, and the resulting damages he suffered. *Id.*

Similar to *McCulloch*, each of Plaintiffs' causes of action concerns Aetna's promise of payment at a specified rate, not "established by [any] benefit plan[]." *Davila*, 542 U.S. at 213. (*See* Compl. ¶¶ 51 (alleging that Aetna breached implied-in-fact contracts by paying Plaintiffs' claims at a "rate that is far below the rate promised by Aetna in the verification process"), 58 (alleging that "Aetna was unjustly enriched by reimbursing Plaintiffs for their services at rates that are . . . substantially lower than the rates that were promised during the verification process"), 76 (alleging that "Aetna falsely represented that it would pay for the health care services rendered to Aetna members at the rates specified in the verification process"). Thus, as Plaintiffs explain, the ultimate resolution of the parties' underlying disagreement rests on a determination of which rate should have applied to Plaintiffs' claims: that which Aetna allegedly promised to pay during the pre-surgery verification process or, as Aetna argues, the in-network Elmhurst Hospital Center rate. Accordingly, because Plaintiffs' claims "do not implicate the terms of the plan — and instead [are]

15

based on the Aetna representative's oral statements" — Plaintiffs have not alleged a colorable claim for benefits pursuant to Section 502(a)(1)(B). *See McCulloch*, 857 F.3d at 149-50 (finding plaintiff's claim that "Aetna promised to reimburse him for seventy percent of the UCR rate," could not be construed as a colorable ERISA claim for benefits); *see also Stevenson* v. *Bank of New York Co.*, 609 F.3d 56, 58, 61 (2d Cir. 2010) (concluding that plaintiff's "breach of contract, promissory estoppel, unjust enrichment, [and] negligent misrepresentation" claims were not preempted by ERISA because they arose from the employer's "promise to maintain certain benefits" and not the terms of the plan itself); *Marin General Hospital* v. *Modesto & Empire Traction Co.*, 581 F.3d 941 (9th Cir. 2009) (finding plaintiff's common-law claims arising out of telephone conversations in which ERISA plan administrators allegedly agreed to pay 90% of the patient's hospital charges "do not satisfy the first prong of *Davila*" because they "could not have [been] brought" under Section 502(a)(1)(B)).

Defendants' assertion that the Court will necessarily "interpret plan terms" to determine Aetna's reimbursement of out-of-network providers does not alter the Court's decision.  (Def. Opp. 5-8).  To begin, Defendants contend that because "UCR is not a uniform term" it requires interpreting plan terms. (*Id.* at 8).  *McCulloch* dictates rejection of this argument, as the Second Circuit found that Aetna's promise to reimburse a physician at "seventy percent of the UCR rate" did "not implicate the actual coverage terms of the health care plan

or require a determination as to whether those terms were properly applied by Aetna." 857 F.3d at 149.

Relatedly, Defendants argue that — although "frame[d] in terms of UCR" — Plaintiffs are effectively suing for the "allowable amount" set forth in Aetna's "internal policies and proprietary information," which is "precisely the type of thing plan administrators rely upon to interpret plan terms." (Def. Opp. 5, 8). As an initial matter, Plaintiffs' Complaint specifically pleads that, to calculate the out-of-network reimbursement rates, "Aetna often relies on internal rate schedules or other proprietary or nonpublic payment methodologies *that are not themselves contained in the applicable health plan*." (Compl. ¶ 19 (emphasis added)). Regardless, the cases on which Defendants rely for this proposition say nothing about ERISA preemption of state-law claims arising from a promise of payment as a percentage of the UCR rate. *See, e.g.*, *Smith* v. *Health Servs. of Coshocton*, 314 F. App'x 848, 850 (6th Cir. 2009) (unpublished decision) (employee suing benefits plan administrator under ERISA).

Lastly, Defendants' contention that the Court will need to "interpret the various out-of-network limitations and cost-share implications" that may arise from reprocessing Plaintiffs' claims from in-network to out-of-network rates is unavailing. (Def. Opp. 8). Plaintiffs do not ask to have their claims reprocessed at out-of-network benefit levels; instead, Plaintiffs seek to recover the amounts Aetna allegedly promised to pay JNS before they agreed to provide medical services to Aetna members. And, indeed, even if the promises of

payment were based on a "summary of the patient's health care plan and the coverage and benefits that would apply to an 'out-of-network' provider," such promises of payment may still give rise to an independent state-law duty. *McCulloch*, 857 F.3d at 149.

Accordingly, because Defendants have not met their burden of satisfying both steps of the first *Davila* prong, the Court must reject complete preemption as a basis for federal subject matter jurisdiction.  *See McCulloch*, 857 F.3d at 145; *see also Kudlek* v. *Sunoco, Inc.*, 581 F. Supp. 2d 413, 416 (E.D.N.Y. 2008) (stating that, on a motion to remand, "the burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof'" (quoting *R.G. Barry Corp.* v. *Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979)), *abrogated on other grounds by Hertz Corp.* v. *Friend*, 559 U.S. 77 (2010).

### c.    Aetna Satisfies *Davila* Prong 2

Although Defendants' failure to meet any part of the *Davila* test defeats their claim of complete preemption and requires the Court to grant Plaintiffs' motion for remand, for the sake of completeness, the Court briefly addresses the second prong of the *Davila* test.  "Under *Davila*, a claim is completely preempted only if 'there is no other independent legal duty that is implicated by [the] defendant's actions.'  The key words here are 'other' and 'independent.'" *Montefiore*, 642 F.3d at 332 (quoting *Davila*, 542 U.S. at 210); *see also id.* at 328 (noting claim fails to satisfy second prong of *Davila* test where it "could have been brought under ERISA, but also rests on '[an]other independent legal

18

duty that is implicated by [the] defendant's actions'" (citation omitted)).  Thus, even if a federal court finds that a plaintiff's state-law causes of action could be construed as "colorable claims" for benefits under ERISA, the court may still lack jurisdiction because the claims rest on separate and independent duties.

Here, Plaintiffs assert that all four of their causes of action "arise from the promises that Aetna representatives made to JNS when it voluntarily called Aetna to verify coverage and benefits for surgeries Dr. Jenkins would perform on Aetna members." (Pl. Br. 18).  Thus, Plaintiffs argue, their claims rest on "independent state-law duties" arising from Aetna's representations and promises during the pre-surgery verification process.  (*Id.* at 17).

The Court, however, finds that Defendants have satisfied this prong, if only based upon Plaintiffs' assertion of a claim for unjust enrichment, which claim cannot be said to rest on any separate and independent duty.  "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish [i] that the defendant benefitted; [ii] at the plaintiff's expense; and [iii] that equity and good conscience require restitution." *Beth Israel Med. Ctr.* v. *Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quoting *Kaye* v. *Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).  When "a healthcare provider claims unjust enrichment against an insurer, the benefit conferred, if any, is not the provision of the healthcare services *per se*, but rather the discharge of the obligation the insurer owes to its insured." *Nathaniel L. Tindel, M.D., LLC* v. *Excellus Blue Cross Blue Shield*, No. 22 Civ. 971 (BKS), 2023 WL 3318489, at *7 (N.D.N.Y. May 9, 2023) (quoting *Plastic*

*Surgery Ctr., P.A.* v. *Aetna Life Ins. Co.*, 967 F.3d 218, 240 (3d Cir. 2020)

(internal footnote omitted)).  And "when the insured is a plan participant, the

'contractual obligation' is none other than the insurer's duty to its insured

under the terms of the ERISA plan." *Plastic Surgery Center*, 967 F.3d at 241.

Accordingly, Plaintiff's unjust enrichment claim "would require the Court

to find that 'an ERISA plan exists' in order to demonstrate that [the Fund]

'received a benefit' and that retention of that benefit without payment would be

unjust.'" *Nathaniel L. Tindel*, 2023 WL 3318489, at *7 (quoting *Plastic Surgery*

*Center*, 967 F.3d at 241-42); *see also N. Jersey Plastic Surgery Ctr., LLC* v.

*1199SEIU Nat'l Benefit Fund*, No. 22 Civ. 6087 (PKC), 2023 WL 5956142, at *20

(S.D.N.Y. Sept. 13, 2023) (finding unjust enrichment claim preempted because

it would require the Court to find that an ERISA plan existed); *Murphy Med.*

*Assocs., LLC* v. *Yale Univ.*, No. 22 Civ. 33 (KAD), 2023 WL 2631798, at *8 (D.

Conn. Mar. 24, 2023) (finding unjust enrichment claim expressly preempted

because it was "premised upon [the defendant's] failure to pay for the services

provided by ERISA plans and therefore necessarily relates to the denial of

benefits promised under ERISA-regulated plans" (internal quotation marks

omitted)).  Contrary to Plaintiffs' assertion, regardless of whether they seek

payment at "the rates that were promised during the verification process" —

and not, as they claim, on "the discharge of the obligation [Aetna] owes to its

insured[s]" — an unjust enrichment claim necessarily requires a showing of a

benefit to the insurer or administrator.  (Pl. Reply 8-9 (first quoting Compl.

¶ 58, and then quoting *Plastic Surgery Center*, 967 F.3d at 240)).  And even

assuming *arguendo* that Plaintiffs' remaining claims satisfy the "independent duty test," because satisfying the test with respect to just one cause of action (here, the unjust enrichment claim) is sufficient, Defendants satisfy the second prong of the *Davila* test.

### 2. Plaintiffs' Causes of Action Are Not Preempted by the Medicare Act

In the alternative, Defendants contend that this Court has subject matter jurisdiction over Plaintiffs' causes of action based on the Medicare Act's "broad preemption provision." (Notice of Removal ¶ 28). In this regard, the Medicare Act contains an express preemption clause that provides that "[t]he Secretary shall establish by regulation other standards ... for [organizations] and plans consistent with, and to carry out, this part." 42 U.S.C. § 1395w-26(b)(1). The statute further provides, under a sub-paragraph headed "Relation to State Laws": "The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medical Advantage] plans which are offered by to [Medical Advantage] organizations under this part." *Id.* § 1395w-26(b)(3). Defendants argue that because Plaintiffs brought this action against AHLIC, which provides only Medicare-related plans, Plaintiffs' claims implicate the Medicare Act's preemption clause. (Notice of Removal ¶ 31; Def. Opp. 11-13).

The Court cannot agree. For starters, Defendants fail to identify a single claim at issue in this action involving services rendered to a patient covered by a Medicare plan. (*See* Def. Opp. 11-13). More broadly, a complaint pleaded entirely under state law (as here) cannot be removed on federal question

grounds unless its claims are "wholly displace[d]" by a federal statute that "completely" preempts them. *McCulloch*, 857 F.3d at 145. Complete preemption exists only where the statute creates a "comprehensive civil enforcement scheme," *Davila*, 542 U.S. at 208, as opposed to the "limited review" contemplated by 42 U.S.C. § 405(g). And courts have recognized that the Medicare Act does not "completely" preempt state-law claims because "Medicare contains no civil enforcement scheme" analogous to ERISA Section 502(a)(1)(B) and is thus not a proper basis for removal. *See, e.g., Parra* v. *PacifiCare of Arizona, Inc.*, 715 F.3d 1146, 1155 (9th Cir. 2013) (finding "[c]omplete preemption [wa]s plainly not applicable" because "Medicare contains no civil enforcement scheme, and Congress has not indicated any intent to permit removal of all disputes over insurance proceeds to the federal courts"); *see also Konig* v. *Yeshiva Imrei Chaim Viznitz of Boro Park Inc.*, No. 12 Civ. 467 (JG), 2012 WL 1078633, at *2 (E.D.N.Y. Mar. 30, 2012) (finding "Medicare laws d[id] not completely preempt" plaintiff's claims because the statute did not "create a federal right to relief that is so powerfully preemptive that it entirely displaces all state causes of action").[3]

---

[3]    In the absence of "complete preemption," all other forms of preemption merely serve as affirmative defenses, and thus "cannot support federal jurisdiction because [they] would not appear on the face of a well-pleaded complaint." *Wurtz* v. *Rawlings Co.*, 761 F.3d 232, 238 (2d Cir. 2014); *see also Franchise Tax Bd.* v. *Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10 (1983) (noting that a federal defense does not create § 1331 "arising under" jurisdiction).

### 3. The Court Declines to Award Plaintiffs Attorney's Fees and Costs

Courts may award attorney's fees under 28 U.S.C. § 1447(c) where the removing party lacked an objectively reasonable basis for seeking removal. This provision "affords a great deal of discretion and flexibility to the district courts in fashioning awards of costs and fees." *Morgan Guar. Tr. Co. of New York* v. *Republic of Palau*, 971 F.2d 917, 923-24 (2d Cir. 1992).

The "standard for awarding such fees hinges on the 'reasonableness' of removal." *Castillo* v. *BJ's Wholesale Club*, 645 F. Supp. 3d 85, 95 (E.D.N.Y. 2022) (quoting *Martin* v. *Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005)); *see also Lott* v. *Pfizer, Inc.*, 492 F.3d 789, 794 (7th Cir. 2007) (stating courts look to "whether the relevant case law clearly foreclosed the defendant's basis of removal"). Conversely, when an objectively reasonable basis exists, fees should be denied." *Campbell* v. *Uber Technologies Inc.*, No. 22 Civ. 1247 (DG) (MMH), 2023 WL 2662947, at *5 (E.D.N.Y. Mar. 28, 2023) (citing *Martin*, 546 U.S. at 141). "A basis for removal is 'objectively reasonable' if the removing party had a colorable argument that removal was proper." *Id.* (citations omitted).

Here, Defendants had a colorable argument that removal was proper under ERISA because relevant case law does not "clearly foreclose" Defendants' basis of removal. *Lott*, 492 F.3d at 794. Because Defendants had an "objectively reasonable" basis for removal, the Court denies Plaintiffs' request for attorney's fees and costs.

**CONCLUSION**

For the reasons set forth in this Opinion, Plaintiffs' motion to remand is GRANTED and Plaintiffs' request for attorney's fees and costs is DENIED. The Clerk of Court is directed to remand the case to Supreme Court of the State of New York, New York County, pursuant to 28 U.S.C. § 1447. The Clerk of Court is further directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      April 25, 2024
            New York, New York

                                        _____
                                              KATHERINE POLK FAILLA
                                              United States District Judge